# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN

| | |
|---|---|
| CVB, INC.,<br>    PLAINTIFF,<br>  V.<br>UNITED STATES,<br>    DEFENDANT,<br>  AND<br>BROOKLYN BEDDING, LLC ET AL.<br>    DEFENDANT-<br>    INTERVENORS | Court. No. 21-00288<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information Removed from Brackets on Pages 2-4, 7-9. |

## <u>MATTRESS PETITIONERS' RESPONSE BRIEF OPPOSING CVB'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Yohai Baisburd
Mary Jane Alves
Sydney Reed, *Summer Associate*[1]
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W., Suite 400
Washington, D.C. 20006
Tel:  (202) 567-2319
Fax:  (202) 567-2301
E-mail:  ybaisburd@cassidylevy.com

*Counsel for Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett & Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Date:  July 1, 2022

---

[1] Not licensed to practice law in the District of Columbia.  Work performed under the supervision of members of the District of Columbia Bar.

# Table of Contents

Page

STATEMENT PURSUANT TO RULE 56.2(C)(1) ............................................................................. 1

    A.    Administrative Determinations Under Review ................................................................ 1

    B.    Issues Presented and Summary of the Argument ............................................................ 2

        1.    Are the Commission's Findings that Purchasers Prioritized Price Supported by Substantial Evidence? ..................................................................... 2

STATEMENT OF FACTS ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.    The Commission's Finding That Price is an Important Factor for Purchasers is Supported by Substantial Evidence and Otherwise in Accordance with Law. ....................... 3

    A.    The Commission Focused on Where Subject Imports Competed with the Domestic Industry, Consistent with Its Approach in Prior Consumer Good Proceedings .................................................................................................................... 3

    B.    For Sales to Purchasers at the Wholesale Level, and for sales to Consumers, Price is an Important Purchasing Factor ........................................................................ 5

    C.    Non-Price Factors Did Not Explain Increased Imports ................................................. 6

    D.    Purchasers' Decision to Buy Lower-Priced Subject Imports Instead of US-Made Mattresses Directly Impacted US Manufacturing ..................................... 7

CONCLUSION ............................................................................................................................... 9

# Table of Authorities

Page(s)

Cases

*Hitachi Metals, Ltd. v. United States*,
350 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) ................................................................................5

*Shandong TTCA Biochem. Co., Ltd. v. United States*,
710 F. Supp. 2d 1368 (Ct. Int'l Trade 2010) ................................................................................2

USITC Decisions

*Certain Large Residential Washers from Korea and Mexico*,
Inv. Nos. 701-TA-488 and 731-TA-1199-1200 (Final) ...............................................................4

*Large Residential Washers from China*,
Inv. No. 731-TA-1306 (Final) .....................................................................................................4

*Mattresses from China*,
Inv. No. 731-TA-1424 (Final) ..............................................................................................4, 5

NON-CONFIDENTIAL VERSION

# MATTRESS PETITIONERS' RESPONSE BRIEF OPPOSING CVB'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Defendant-Intervenors Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc. Kolcraft Enterprises, Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"), AFL-CIO, (collectively, "Mattress Petitioners") respectfully submit this response brief opposing Plaintiff's motion for judgment on the agency record. *See Brief of Plaintiff CVB, Inc. In Support of Its Rule 56.2 Motion for Judgement on the Agency Record*, ECF 48 ("Pl Br"). For the reasons that follow, the Court should uphold the unanimous final affirmative determinations by the U.S. International Trade Commission as supported by substantial evidence and otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2(C)(1)

A. **Administrative Determinations Under Review**

Mattress Petitioners are domestic producers of mattresses and unions representing mattress production workers that oppose Plaintiff's challenge to the Commission's final affirmative determinations in the antidumping and countervailing duty investigations of *Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1945-1501 (Final).

**B.  Issues Presented and Summary of the Argument**

This response brief complements the United States' Response Brief by addressing one issue before the Court.[2]

1. *Are the Commission's Findings that Purchasers Prioritized Price Supported by Substantial Evidence?*

Yes.  The record shows that purchasers consistently prioritize price in their purchasing decisions as they routinely listed price among their top three purchasing factors.  The Commission properly focused on the importance of price to purchasers in analyzing competition between subject imports and domestic production.  While the Commission recognized the role of consumers in framing purchasers' priorities, the Commission rested its analysis on competition for sales at the wholesale level to purchasers, primarily retailers, where subject imports predominantly competed against the domestic industry, following the Commission's method of analysis in previous consumer good investigations.

## STATEMENT OF FACTS

Mattress Petitioners hereby incorporate the Defendant's statement of facts by reference.

## STANDARD OF REVIEW

Mattress Petitioners hereby incorporate the Defendant's statement of the standard of review by reference.

---

[2] As an importer of subject merchandise from [            ], *see* [                        ], CVB does not have standing to challenge the Commission's determinations with respect to [       ].  *See, e.g.*, *Shandong TTCA Biochem. Co., Ltd. v. United States*, 710 F. Supp. 2d 1368 (Ct. Int'l Trade 2010).

# ARGUMENT

I. **The Commission's Finding That Price is an Important Factor for Purchasers is Supported by Substantial Evidence and Otherwise in Accordance with Law**

In examining the importance of price in mattress purchasing decisions, the Commission correctly analyzed price through the perspective of the purchasers at the wholesale level, buttressed by consumer demand. The record supports the Commission's decision to focus on where subject imports and the domestic industry competed, and this approach comports with its approach in prior proceedings involving consumer goods. For sales to purchasers at the wholesale level, and for sales to consumers, price is an important purchasing factor. Non-price factors did not explain the increase in subject imports. The increase in lower-priced subject imports adversely impacted domestic producers, including their workers and surrounding communities.

    A. **The Commission Focused on Where Subject Imports Competed with the Domestic Industry, Consistent with Its Approach in Prior Consumer Good Proceedings**

The Commission acknowledged that while "{it} focus{es}{the} analysis on competition at the wholesale level," it cannot ignore that the "demand for mattresses at the wholesale level is derived from consumer demand for mattresses." Confidential Commission Views at 42-43; Appx124084-124085. In the US mattress market, purchasers are distinct from consumers, as purchasers, such as [

] acquire mattresses from domestic producers and then resell the mattresses to the end-user consumer. Confidential Report at II-2; Appx124148. The record demonstrated that US producers and importers of mattresses from the subject countries sold mainly at the wholesale level to purchasers in the retail channel, including brick-and-mortar, internet/online, and omni-channel retailers, with sales to distributors and end users accounting

3

for a [                                    ] share of their shipments.  Confidential Report at Table II-4; Appx124156-124158.  Market competition between US producers and subject imports thus rests at the wholesale level, primarily to retailer purchasers, and not to consumers.  *See* Confidential Commission Views at 29-30, 42-43; Appx124071-124072, Appx124084-124085.  The Commission properly focused on the competition between subject imports and domestically produced mattresses to purchasers at the wholesale level.  *See id*.  It is the importance of price at the wholesale level to purchasers that played a pivotal role in their choice to buy the lower-priced, unfairly traded mattresses from the subject countries instead of US-manufactured mattresses.

The Commission's approach of focusing on the sales at the wholesale level to purchasers, while also acknowledging consumer preferences, is consistent with its approach in previous investigations on consumer goods.  In previous *Large Residential Washers* investigations, the Commission recognized the role of consumer preferences, but clarified the focus of its competition analysis involved "sales by domestic producers and importers to retailer/distributors."  *Certain Large Residential Washers from Korea and Mexico*, Inv. Nos. 701-TA-488 and 731-TA-1199-1200 (Final), USITC Pub. 4378 at 18-19 (Feb. 2013).  In the subsequent investigation of *Large Residential Washers from China*, the Commission acknowledged the influence of consumer preferences and then specified that its "analysis of competition and pricing in the U.S. washer market" rested "on sales by domestic producers and importers to retailer/distributors."  Inv. No. 731-TA-1306 (Final), USITC Pub. 4666 at 16 (Jan. 2017).  The Commission also utilized this same approach of analyzing competition for sales at the wholesale level in a previous mattress investigation.  *See Mattresses from China*, Inv. No. 731-TA-1424 (Final), USITC Pub. 5000 at 23-24 (Dec. 2019); Appx6535-6536.  While each

case may be *sui generis*, *Hitachi Metals, Ltd. v. United States*, 350 F. Supp. 3d 1325, 1334 (Ct. Int'l Trade 2018), the Commission's approach in prior investigations of consumer goods clearly comports with the Commission's analytical approach here, of recognizing consumer preferences but focusing on purchaser's preferences at the wholesale level where subject imports compete with the domestic like product.

      B.    **For Sales to Purchasers at the Wholesale Level, and for Sales to Consumers, Price is an Important Purchasing Factor**

Plaintiff CVB would have the Court reweigh the evidence to conclude that packaging of mattresses into a box drove mattress purchasing decisions. Pl Br, ECF 48 at 12, 16. As clearly stated by the Commission, in determining whether to purchase mattresses, purchasers highly prioritize price. Confidential Commission Views at 44; Appx124086; Petitioners' Final Comments at 9; Appx123911. In purchaser questionnaires, 20 of the 23 responding purchasers stated that they at least sometimes, if not usually or always, purchase the lowest-priced product. *See* Confidential Report at II-33; Appx124179; Petitioners' Post-Hearing Brief at Exhibit 1-27; Appx114709. Additionally, as stated by the Defendant, "the Commission noted that purchasers ranked price as a top three purchasing factor more often than any factor except quality, and that price was also one of the factors most identified as very important by responding purchasers." Defendant Response Brief, ECF 51 at 26; *see also* Confidential Report at Table II-12; Appx124180. Furthermore, domestic producer executives testified about the importance of price to purchasers, confirming that "price dictates in the mattress market." Hearing Transcript at 26 (Karl Glassman, Leggett & Platt); Appx12235. Indeed, packaging of mattresses into a box ranked lower than price for purchasing decisions at the wholesale level according to the data collected by the Commission. Confidential Report at Table II-12; Appx124180. Moreover, purchasers generally ranked the US-manufactured mattresses as "comparable" to mattresses

5

imported from each of the subject countries with respect to "{p}ackaging (*i.e.*, MIBs or flat-packed mattresses)." Confidential Report at Table II-14; Appx124182-124184.

While analyzing market competition at the purchaser level, the Commission did recognize the role of consumers, but it also appreciated that consumers also are "motivated primarily by price." Confidential Commission Views at 66; Appx124108. According to an independent study commissioned by the Better Sleep Council in 2020, price (82%) is the most important consideration to a final purchase decision for consumers buying mattresses. Packaging/compression did not make the list. Petitioners' Post-Hearing Brief at Exhibit 2; Appx114739. What did make the list in addition to price? "Free setup" (54%) and "free removal of old mattress" (53%), neither of which occurs when a common carrier such as FedEx or UPS, or e-tailers such as Amazon or Wayfair, ship an MiB. *Id*.; Appx114739. The survey also confirmed the direct competition between "boxed" and "unboxed" mattresses with nearly a quarter (23%) of consumers intending to purchase a mattress in the next 60 days responding "not sure/I don't know" to "How will you receive your new mattress?" and an additional quarter indicating they intend to purchase an unboxed mattress. *Id*.; Appx114744. In other words, the Commission's focus on competition between subject imports and the domestic like product, where price was important, did not detract from the fact that consumers also viewed price to be important in their buying decisions.

### C.  Non-Price Factors Did Not Explain Increased Imports

To counter the Commission's analysis of price, Plaintiff asserts the Commission failed to consider other, non-price factors for increased imports. Pl Br, ECF 48 at 33. Defendant effectively rebuts Plaintiff's assertion, clearly demonstrating the Commission also looked to other factors and assessed their importance. Defendant Response Brief, ECF 51 at 26-27. Following an analysis of non-price factors, Commission appropriately found an elevated

importance of price for mattress purchasing decisions, a finding fully supported by the record, including purchasers' questionnaire responses reporting the importance of price in their purchasing decisions. Confidential Commission Views at 44; Appx124086 (citing Appx124178-124180).

### D. Purchasers' Decision to Buy Lower-Priced Subject Imports Instead of US-Made Mattresses Directly Impacted US Manufacturing

As purchasers viewed price as a high priority in decision making, they forced domestic producers to reduce their prices in order to retain sales, with six of the eight pricing products declining over the POI: [    ] percent for product 1, [    ] percent for product 2, [    ] percent for product 3, [    ] percent for product 5, [    ] percent for product 6 and [    ] percent for product 8. Petitioners' Post-Hearing Brief at Exhibit 1-17; Appx114699. Alternatively, purchasers chose to buy lower-priced subject imports instead of US-manufactured mattresses, which also directly impacted the domestic producers' manufacturing facilities and their local communities.

The US mattress industry is structured in a manner that domestic producers "{have} the geographic reach and capacity to supply the US market." Petitioners' Post-Conference Brief at 22; Appx93626. As illustrated in Table III-1, domestic producers have production locations throughout the United States, in relatively small communities such as Corsicana, Texas; Shelbyville, Tennessee; and Bartow, Florida, and larger urban centers like Phoenix, Arizona and Greensboro, North Carolina. Confidential Report at Table III-1; Appx124195-124198. This provides the US mattress industry the ability "to build and deliver a mattress anywhere in the United States within days of receiving an order." Petitioners' Post-Conference Brief at 23; Appx93627.

The barrier to consistently utilizing these facilities was competition from unfairly traded low-priced imports. Table III-4 clearly illustrates that domestic producers have unused production capacity, indicating their ability to ramp up production to meet demand if they were able to compete on a level playing field. Confidential Report at III-16; Appx124208. Domestic industry leaders explained that "due to the low-priced imports, we were getting fewer sales. Without sales, we were not fully utilizing our production capacity, even with only one shift. If we had the sales, we would produce even more using two shifts of employees." Hearing Transcript at 33 (John Merwin, Brooklyn Bedding); Appx12242. Others noted that "U.S. producers…are prepared to further expand our capacity, and add workers and shifts to meet rising U.S. demand." Hearing Transcript at 30-31 (Karl Glassman, Leggett & Platt); Appx12239-12240. These statements illustrate the clear capacity of domestic producers to ramp up production to meet demand. But in the face of stiff unfair import competition, domestic producers were forced to operate with fewer shifts and underutilized capacity.

When domestic "factories are successful, so, too, are the communities in which they are located." Petitioners' Post-Hearing Brief at Exhibit 14; Appx114945. Domestic manufacturing plants make a difference in communities across the United States, offering thousands of well-paying jobs. Confidential Report at Table III-11; Appx124221. Thus, when domestic producers must "reduce their prices to compete" against subject imports or are unable to operate multiple shifts or use their machinery to full capacity, manufacturing facilities face negative consequences, especially when "some US producers {abandon} the market." Petitioners Post-Hearing Brief at Exhibit 1-17-18; Appx114699-114700.

During the POI, multiple manufacturing plants were forced to close [

].

Confidential Report at III-10; Appx124202.  Such facilities included [



]. Confidential Report at Table III-3; Appx124202.

## CONCLUSION

The Commission properly focused its analysis on the competition between domestic producers and subject imports for purchasers' orders at the wholesale level.  As the record clearly indicates, purchasers prioritize price in purchasing decisions, and as correctly found by the Commission, over the POI, domestic producers lost sales because of purchaser's emphasis on price and their decision to increase purchases of lower-priced mattresses imported from the subject countries instead of from the domestic industry.

                Respectfully submitted,

                /s/ Yohai Baisburd

                Yohai Baisburd
                Mary Jane Alves
                Sydney Reed, *Summer Associate*[3]
                CASSIDY LEVY KENT (USA) LLP

                *Counsel for Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett & Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Date:  July 1, 2022

---

[3] Not licensed to practice law in the District of Columbia.  Work performed under the supervision of members of the District of Columbia Bar.

Court. No. 21-00288

## **Certificate of Compliance**

The undersigned hereby certifies that the forgoing submission of "Mattress Petitioners' Response Brief Opposing CVB's Rule 56.2 Motion for Judgment on the Agency Record," filed by Defendant-Intervenors, Mattress Petitioners, on July 1, 2022, contains 2,268 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.

BY: /s/ Yohai Baisburd