Slip Op. No. 24-2

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CVB, INC., *Plaintiff*, v. UNITED STATES, *Defendant*, and BROOKLYN BEDDING, LLC, *et al.*, *Defendant-Intervenors*. | Before: Stephen Alexander Vaden, Judge<br><br>Court No. 1:21-cv-00288 (SAV) |

# OPINION

[Denying the Defendant's Joint Motion to Retract the Court's Public Slip Opinion and Accord Confidential Treatment to Alleged Business Proprietary Information Contained Therein.]

Dated: January 8, 2024

*Geoffrey M. Goodale*, Duane Morris, LLP, of Washington, DC, for Plaintiff CVB, Inc. With him on the briefs were *Andrew R. Sperl*, *Nathan J. Heeter*, and *Lauren E. Wyszomierski*, Duane Morris, LLP, and *Stephen G. Larson*, *Robert C. O'Brien*, and *Paul A. Rigali*, Larson LLP, of Los Angeles, CA.

*Jane C. Dempsey*, Office of the General Counsel, United States International Trade Commission, of Washington, DC, for Defendant United States. With her on the briefs were *Dominic Bianchi*, General Counsel; *Andrea C. Casson*, Assistant General Counsel for Litigation; and *Brian R. Soiset*, Attorney-Advisor.

*Mary Jane Alves*, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Defendant-Intervenors Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises, Inc.; Leggett & Platt, Inc.; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO. With her on the briefs were *Yohai Baisburd* and *Sydney Reed*.

**Vaden, Judge:** On December 19, 2023, the Court issued a public slip opinion in the underlying case affirming the United States International Trade Commission's (the Commission) affirmative injury finding. *CVB, Inc. v. United States*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 189, Slip Op. 2023-184. Shortly thereafter, the Commission notified the Court it believed the public opinion contained unredacted business proprietary information. Def.'s Letter, ECF No. 90. Before the Court is the Commission's Joint Motion to Retract the Court's Public Slip Opinion and Accord Confidential Treatment to Business Proprietary Information Contained Therein (Motion to Retract), ECF No. 93. For the reasons set forth below, the Court respectfully **DENIES** the Motion.

## BACKGROUND

The underlying case involves a challenge to the Commission's final affirmative injury determination in its investigation of mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam. *See CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *1–2. The Slip Opinion outlined numerous errors by the Commission but found the errors were ultimately harmless and sustained the Commission's final determination. *See id.* at *52. To explain what the Court characterized as the Commission's "mathematical obfuscation and statistical chicanery[,]" the Court illustrated how responses to various questionnaires contained in the record and a chart from the Commission's final

determination showed the opposite of what the Commission claimed they did. *See id.* at *30–43.

After the Court released its opinion, the Commission contacted the Court by telephone and email to express concerns that the opinion revealed confidential business proprietary information. The next day, the Commission filed a Letter to the Court on official Commission letterhead requesting that the Court retract its opinion because the Commission "identified business proprietary information" in the opinion. Def.'s letter at 1, ECF No. 90. The Court issued a Paperless Order the same day informing the parties that a written motion was the appropriate way to raise any concerns regarding confidential or business proprietary information. ECF No. 91. After business hours on Friday, December 22, the Commission filed the Joint Motion. Motion to Retract, ECF No. 93.

## LEGAL STANDARDS

USCIT Rule 5(g) governs filings containing confidential or business proprietary information. Rule 5(g)'s mandate is as clear as it is broad: "Any paper containing confidential or business proprietary information must identify that information by enclosing it in brackets." The rule serves three purposes. First, the rule protects confidential and business proprietary information by clearly identifying it for the parties and the Court. Second, the rule promotes transparency and public access to judicial records by requiring parties to designate precisely what information is confidential. Parties cannot protect information *en masse* by

stamping a label atop every page. Instead, they must excise only that information which is truly confidential, allowing the public to view everything else. *See* USCIT R. 5(g). Finally, the rule promotes judicial efficiency by providing the Court with one record it examines to adjudicate the case. Bracketing allows the Court to look at one place to see the entire record the agency considered and know what portion of that record the parties claim is confidential without having to move back and forth between different sources.

The Court's rules do not define what constitutes confidential or business proprietary information. 19 U.S.C. § 1677f(b) governs the Commission's treatment of business proprietary information. Information submitted to the Commission "which is designated as proprietary by the person submitting the information shall not be disclosed to any person without the consent of the person submitting the information[.]" 19 U.S.C. § 1677f(b)(1)(A). Information is neither confidential nor business proprietary if it is publicly available. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019) (defining confidential information as information that is "private" or "secret") (citing Webster's Seventh New Collegiate Dictionary 174 (1963)); *see also* 19 U.S.C. § 1677f(b)(2) (the Commission can determine a party's designation of information as proprietary is unwarranted based on the information's "nature and extent … or its availability from public sources"). *Cf. Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge … cannot be a trade secret.") (internal citations omitted).

Merely claiming information is confidential does not make it so. Were that true, a party could designate anything it wanted as confidential. Even when the parties agree to secrecy, courts are "duty-bound to protect public access to judicial proceedings and records." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). Where the parties lack any incentive to defend the public's right of access, the Court must balance that right with the need for confidentiality. *Id.* at 419. Transparency — not secrecy — is the default rule. *Id.* at 417.

## DISCUSSION

The Motion asks the Court to retract its Slip Opinion and issue a new confidential opinion with forty-four sets of brackets in place of information contained in the original Slip Opinion. *See* Motion to Retract Attach. A, ECF No. 93. The objected-to information falls into two broad categories, company names and numerical approximations. First, the Motion to Retract objects to the Slip Opinion's naming of the companies that responded to the Commission's questionnaires. *See, e.g., id.* at 2–4 (requesting the Court remove the names of various companies). This information is not confidential because the Commission failed to abide by USCIT Rule 5(g) when designating information as confidential or business proprietary. *See id.* at 3 (admitting the cited pages "were not individually bracketed"). Second, the Motion to Retract objects to the Court's usage of approximations to summarize information the Commission did properly bracket according to USCIT Rule 5(g). *See, e.g., id.* at 1–2 (objecting to various numerical approximations). This portion of

the Motion fails because the information is publicly available, the Court's approximations do not "closely track" the Commission's figures as the Motion to Retract suggests, or both. *Id.* at 1. The Motion's motley approach to redaction demonstrates the importance of properly designating information as confidential under USCIT Rule 5(g) and maintaining a consistent approach to what constitutes confidential or business proprietary information. *Compare id.* at 1–2 (objecting to company names and production ratios), *with id.* at 2–3 (objecting to company names but *not* purchase ratios). The Commission can best encourage voluntary cooperation from companies and protect allegedly confidential information by following the rules. *Cf. id.* at 2–3 (explaining why protecting confidential information is important to the Commission).

### A. Company Names

The Motion to Retract asks the Court to censor the names of "non-party purchasers that voluntarily provided questionnaire responses"[1] to the Commission. *Id.* at 2. According to the Motion, the Commission views the "entirety of purchaser questionnaire responses, including the identity of those purchasers" as confidential business proprietary information. *Id.* However, the responses to the purchaser

---

[1] Although the Motion to Retract characterizes the responses as voluntary, the questionnaire itself does not. The questionnaire states a response "is mandatory and failure to reply as directed can result in a subpoena or other order to compel the submission of records or information in your firm's possession." Blank "U.S. – Purchaser" Questionnaire at 1, U.S. Int'l Trade Comm'n, https://bit.ly/3vjf04h (last visited Jan. 8, 2024). This is not the only inconsistency between what the Commission represents in the Motion to Retract and what the Commission's own questionnaires say. *See infra* note 4.

questionnaires were not bracketed in accordance with USCIT Rule 5(g), meaning any claim to confidentiality was waived long ago.

USCIT Rule 5(g) requires that "[a]ny paper containing confidential or business proprietary information must identify that information by enclosing it in brackets." Counsel and the parties are responsible for complying with the Court's rules and orders regarding the redaction of sensitive information. *Cf.* In re E-Government Act of 2002 and Privacy Redaction, Admin. Order No. 08-01, at 2 (CIT May 2, 2008, amend. Nov. 25, 2008, eff. Jan. 1, 2009), https://www.cit.uscourts.gov/sites/cit/files/AO-08-01.pdf ("It is the responsibility of counsel and the parties to be sure that all filings comply with the Court's Rules, orders, or notices regarding the redaction of personal data identifiers or other sensitive information."). The Commission admits that it did not bracket the purchaser questionnaires filed with the Court. Motion to Retract Attach. A at 3, ECF No. 93. The Motion to Retract makes three excuses for this. First, it asserts that the company names were bracketed in the Commission's index to the record. *Id.* Second, it notes that the Commission stamped a "Business Proprietary" label atop the pages of the questionnaires. *Id.* Third, it makes veiled excuses about the length of the administrative record. *See id.* (describing the confidential joint appendix as "voluminous").

The Motion's first excuse is that the Commission bracketed the company names in the index it filed with the confidential joint appendix. This is half true

but of no consequence. The index does contain brackets in place of the names of the companies that responded to the questionnaires; but instead of brackets around the purportedly confidential information (*e.g.,* "[company name]"), the index contains brackets around empty space (*e.g.,* "[    ]"). *See, e.g.*, Confidential J.A. Index at 39–40, ECF No. 66. That is how the public version of a document should be bracketed, not the confidential version. *See* USCIT R. 5(g) ("A non-confidential version in which the confidential or business proprietary information is deleted must accompany a confidential version of a paper."). This detail is crucial because it means that, even if the Court exercised extra diligence and searched the entire confidential joint appendix to confirm a company's name was not designated as confidential anywhere, it would not locate the place where the Commission supposedly designated the company name as confidential because the blank space in place of the company name would not show up in a search. Disregarding the parties' error does them no service, as bracketing information somewhere else in the record does not magically afford protection across the entire record.

The second excuse proffered is the "business proprietary" label stamped at the top of the questionnaire pages. Motion to Retract Attach. A at 3, ECF No. 93. This label, which is often partially obscured by the stamping mechanism of the Court's e-filing system, is exactly the type of blanket designation that USCIT Rule 5(g) prohibits. Rule 5(g) does not allow parties to designate information as confidential by labelling an entire page. Indeed, even Government officials

classifying a document for national security reasons must indicate "which portions are classified … and which portions are unclassified." Exec. Order No. 13,526, 75 Fed. Reg. 707, 710 (Dec. 29, 2009). Looking at the Commission's questionnaires, it is apparent why blanket designation is disfavored. One question asks, in essence, whether the responding company is a brick-and-mortar or online retailer. Blank "U.S. – Purchaser" Questionnaire at 9, U.S. Int'l Trade Comm'n, https://bit.ly/3vjf04h (last visited Jan. 8, 2023).[2]  Surely it is no secret whether a company has physical storefronts or whether it sells mattresses online. Allowing blanket designation like the Motion to Retract requests is incompatible with a system where public access to judicial proceedings is the default rule. *See Binh Hoa Le*, 990 F.3d at 417.

Finally, the Commission makes numerous allusions to the length of the administrative record to justify its failure to abide by USCIT Rule 5(g). *See, e.g.*, Motion to Retract at 2, ECF No. 93 (noting the length of the confidential record); Motion to Retract Attach. A at 3, ECF No. 93 (twice describing the record as "voluminous" while explaining that the Commission "inadvertently" failed to bracket large swaths of the record it now claims contain confidential information). Courts may not use administrative burden to justify denying public access to judicial records. *In re Leopold to Unseal Certain Elec. Surveillance Applications &*

---

[2] A blank version of the purchaser questionnaire in this investigation is available for download on the Commission's website at the listed URL.

*Ords.*, 964 F.3d 1121, 1134 (D.C. Cir. 2020) (Garland, J.). Neither can quasi-judicial agencies like the Commission.

The Commission and the other parties missed multiple opportunities to raise concerns about this information earlier. If the parties believed the company names were confidential, the parties should have bracketed that information. *See* USCIT R. 5(g). Some of the information to which the Motion to Retract objects was discussed in open court at oral argument. *See, e.g.*, Oral Arg. Tr. at 25:5–26:16, ECF No. 75 (discussing specific companies by name and their product mixes). If the parties believed this information was confidential, they should have raised that concern during oral argument or on reviewing the transcript. *See* Admin. Order No. 02-01 at 8, 20 (outlining the procedures for breaches involving confidential information); Def.'s Public Req. for Redaction, *United States v. Aegis Security Ins. Co.*, No. 1:20-cv-03628 (CIT Jan. 2, 2024), ECF No. 132 (requesting redaction of allegedly confidential information in an oral argument transcript). It is strange that only now, after an opinion some may characterize as less than complimentary, does the Commission demand secrecy. If it was fine to discuss unbracketed company names in a public court session, it is fine to do the same in a written public opinion. The Commission's request to redact the names of the responding companies is therefore **DENIED**.

## B. The Court's Use of Approximations

The second category of information to which the Motion to Retract objects is the Court's use of numerical approximations to describe the general conditions of the mattress market. *See generally* Motion to Retract Attach. A at 1–2, ECF No. 93. This includes the origin of imports, relative share of imported and domestic mattresses in the market, and the segmented nature of mattress production and purchasing. *See id.*

As a preliminary matter, the Court doubts that much of the allegedly confidential information the Commission did properly bracket qualifies as confidential by the Commission's own definition[3] or by any reasonable understanding of the terms "confidential" or "business proprietary." The Commission's own questionnaires state "[t]he commercial and financial data furnished in response to this questionnaire *that reveal the individual operations of your firm* will be treated as confidential" and that "general characterizations of numerical business proprietary information (such as discussion of trends)" will be treated as confidential information only for good cause.[4] Blank "U.S. – Purchaser" Questionnaire at 4 (emphasis added). Yet the Motion to Retract objects to public

---

[3] The Commission's rules do not necessarily govern the Court, but information that fails to satisfy the Commission's standards for confidentiality is unlikely to satisfy the Court's standards.

[4] In the Motion to Retract, the Commission claims that it considers "the entirety of purchaser questionnaire responses" to be business confidential information. Motion to Retract Attach. A at 3, ECF No. 93. Once again, the Commission's own questionnaires are at war with its Motion. *Cf. supra* note 1.

discussion of the general market trends of declining Chinese imports and rising imports from other countries. *See* Motion to Retract Attach. A at 1, ECF No. 93. That is precisely the type of information the Commission's questionnaires acknowledge is not confidential or business proprietary. It does not reveal the individual operations of any company and is instead a general discussion of broad market trends. The same goes for the Slip Opinion's description of the respective market shares of imported and domestically produced mattresses. *See CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *4, *10–11.

Much of the information on market trends and market share is publicly available. The decline in Chinese imports and concurrent rise in imports from other countries is well documented. *See, e.g.*, David Perry, *China's Mattress Import Share Falls to 1% in August*, FURNITURE TODAY (Oct. 8, 2019), https://bit.ly/4aFKfH9 (reporting Chinese mattresses were 82 percent of imports in January 2019 and 1 percent in August 2019); David Perry, *Mattress Alliance, Petitioners Square Off Over Antidumping*, FURNITURE TODAY (Apr. 13, 2020), https://bit.ly/3H3wmVE (reporting Vietnam, Thailand, Turkey, Serbia, Malaysia, Indonesia, and Cambodia collectively account for 83.3 percent of mattress imports). Information about the relative market share of imports and the domestic industry is also available from general interest newspapers. Nathan Bomey, *Chinese 'Dumping' Has Slashed Mattress Prices, but at a Cost to the U.S. Bedding Industry*, USA TODAY (Dec. 19, 2019), https://bit.ly/47qssRn (stating Chinese imports in 2018 were "equivalent to

about one-third of total mattress production capacity in the United States."). The Court will not redact information as confidential that some of the responding parties themselves have freely provided to the press. *See, e.g.*, David Perry, *Mattress Alliance, Petitioners Square Off Over Antidumping*, FURNITURE TODAY (Apr. 13, 2020), https://bit.ly/3H3wmVE (quoting Ashley Furniture Vice President Brian Adams saying imports from Vietnam, Thailand, Turkey, Serbia, Malaysia, Indonesia, and Cambodia make up "22 [percent] of the U.S. mattress market" and "83.3 [percent] of all mattress imports"). Although the parties claim that knowledge of Ashley Furniture's lopsided mattress production is "sensitive," Ashley's Vice President Brian Adams testified at the Commission's *public* hearing and stated that Ashley had shifted "almost exclusively to [boxed mattresses], both in our purchases and in our production." *Compare* Motion to Retract Attach. A at 2, ECF No. 93, *with* Statement of Brian Adams at 143:25–144:5, J.A. at 7,569, ECF No. 60, *and CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *36 ("Of the twelve companies that produced both mattress types in 2019, five produced virtually none of one kind" and "Ashley … produced far less than one percent of U.S. production of one kind of mattress."). Because this information is publicly available, it fails to qualify as confidential or business proprietary information. *See Food Mktg. Inst.*, 139 S. Ct. at 2363.

Even if information is confidential or business proprietary, the Court's use of approximations appropriately summarizes the information without revealing exact

figures. *See* Blank "U.S. – Purchaser" Questionnaire at 4 ("general characterizations of numerical business proprietary information" will be treated as confidential only for good cause). Some of the objections raised border on frivolity. For instance, the Motion to Retract objects to the Court's use of the phrase "thousands of percent[.]" Motion to Retract Attach. A at 1, ECF No. 93; *see also CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *4. Thousands of percent can mean anything from 2,000 percent to 999,999 percent. Such a wide range can hardly tip off a reader to anything approaching the exact number the Commission bracketed. The same goes for the term "negligible." *Compare* Motion to Retract Attach. A at 2, ECF No. 93, *with CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *36. The word negligible is comparative. *See* Webster's Second New International Dictionary 1638 (1956) (defining negligible as "that may be neglected or disregarded"); *Negligible*, Oxford English Dictionary, https://bit.ly/3NRiW2R (defining negligible as "so small or insignificant as not to be worth considering"). That a company's market share of boxed mattress production is negligible compared to its unknown share of flat-packed mattress production does not reveal the actual market share percentage for either. *Compare* Motion to Retract Attach. A at 2, ECF No. 93, *with CVB*, 2023 Ct. Intl. Trade LEXIS 189, at *35–36.

Elsewhere, the Court similarly couches its language to avoid exactness. The Slip Opinion uses words like "roughly," "about," and "at least" to indicate that the numbers given are merely a rough approximation. *See, e.g.*, *CVB*, 2023 Ct. Intl.

Trade LEXIS 189, at *4, *10, *35, *39. It also uses ratios to demonstrate the lopsided nature of domestic mattress production without revealing the raw production figures. *Id.* at *35–37. Ballpark figures like these provide enough information for the reader to understand the case without revealing any confidential or business proprietary information. Because these general summaries do not reveal such information, they need not be redacted.

### C. The Virtues of Transparency

The American tradition of public access to judicial proceedings dates back not merely to the founding, or even to the English common law, but all the way back to Ancient Rome. *Binh Hoa Le*, 990 F.3d at 418 ("The principle traces back to Roman law, where trials were *res publica* — public affairs."). Legal arguments and judicial decisions are meant to be public because "American courts are not private tribunals summoned to resolve disputes confidentially at taxpayer expense." *Id.* at 421. This is especially true when the courts resolve disputes to which the Government is a party, affecting the entire citizenry. Like a student taking a math test, courts are expected to show their work. The public does not and should not accept final answers to complicated questions on faith alone. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring) ("Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law.").

Although the Court adjudicates the Motion to Retract based on the law and the facts currently before it, this is not the first time the Commission has taken a

questionable position on transparency before the Court. The Commission took a similar tact in a high-profile case involving fertilizer imports. *See generally OCP S.A. v. United States*, 658 F. Supp. 3d 1297 (CIT 2023). In a conference prior to oral argument, the Court noted that more than one hundred members of Congress had formally commented on the Commission's decision. Despite the public interest in the case, the Commission urged the Court to hold the entire oral argument in closed session. Audio Recording: Conference Call Regarding Oral Argument at 24:33–50 (June 7, 2022), ECF No. 144.[5] This would bar attendance by not only the public but also all non-lawyers, including corporate officers of the parties to the case. The Commission's counsel urged this route because she believed business proprietary information "underline[d] all the aspects and all the disputes" in the case. *Id.* at 29:05–15. The Court decided to hold a public oral argument with a confidential session at the end if necessary. *Id.* at 33:00–35:00. The transcript of the eventual oral argument was 229 pages. *See* Confidential Oral Arg. Tr., ECF No. 130. The public portion comprised 192 of those pages. *See* Public Oral Arg. Tr., ECF No. 129. The opinion dispensing with the case was entirely public. *Compare* Audio Recording: Conference Call at 24:33–50 (Commission counsel claiming it would be impossible to conduct a public hearing on the matter), *with OCP S.A.*, 658 F. Supp. 3d at 1297–1324 (28 reporter pages of opinion, none of which are confidential).

---

[5] The ECF Numbers in this citation and the remaining citations in this paragraph correspond to docket entries in the *OCP* case, not this case. The Court Number for *OCP* is 1:21-cv-00219.

As with *OCP*, the Commission's decision in this matter and in the related petitions regarding mattresses from China drew public attention. Multiple media outlets published reports or editorials about the antidumping petitions. *See, e.g.*, Derek Miller & Miles Hansen, *Will Biden 'Go to the Mattresses' on Trade Policy?* THE HILL (Feb. 23, 2021), https://bit.ly/3NPsHOQ. Numerous local outlets reported the petitions' potential effects on businesses. *See, e.g.*, Dennis Romboy, *Mattress Fight: Utah Firm Says 'Corporate Warfare' Threatens to Blunt Filling Critical Coronavirus Needs*, DESERET NEWS (Apr. 18, 2020), https://bit.ly/3tEcxBa. Senators on both sides of the political aisle publicly commented on the petitions and how the Commission handled them. *See, e.g.*, *id.* (Senator Mike Lee of Utah); *Brown, Blunt Applaud Trade Commission Ruling on Mattress Antidumping Investigation* (July 6, 2021), https://bit.ly/48EUdXr (Senators Sherrod Brown of Ohio and Roy Blunt of Missouri). When faced with public attention, the Commission's reflexive action appears to be to stifle public access to the judicial review of its decisions.

Although the Commission is not an elected body, it is part of the executive branch and is accountable to the people through their elected representatives. The Commission's actions, like the Court's, are not merely academic. An injury finding can make goods more expensive for consumers across the nation. A finding of no injury can close factories and destroy manufacturing jobs. Companies affected by this investigation claimed the Commission's decision could result in job losses. *See, e.g.*, Romboy, *Mattress Fight*, DESERET NEWS (Apr. 18, 2020), https://bit.ly/3tEcxBa

Court No. 1:21-cv-00288 (SAV)                                                                                           Page 18

(Mattress company Malouf claiming the petition in this case "threatens to shut down its business and leave 1,200 workers … without jobs"). When someone loses his livelihood as a result of Government action, he has a right to know how and why the Government took that action. Neither administrative agencies nor this Court can hide from scrutiny by censoring information. Citizens can only hold their Government accountable if they know what that Government is doing. *See Bien Hoa Le*, 990 F.3d at 417 ("[B]ecause 'We the People' are not meant to be bystanders, the default expectation is transparency — that what happens in the halls of government happens in public view."); *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("What happens in the halls of government is presumptively open to public scrutiny."). Though the Commission may be an "independent" agency, it is not immune to legal and democratic accountability. *Cf.* 19 U.S.C. §§ 1330, 1333(g). The Constitution governs all branches of the Government — even the administrative state. *See Loper Bright Enters., Inc. v. Raimondo*, 45 F.4th 359 (D.C. Cir. 2022), *cert. granted in part sub nom. Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023); *Relentless, Inc. v. Dep't of Com.*, 62 F.4th 621 (1st Cir.), *cert. granted in part sub nom. Relentless, Inc. v. Dep't of Com.*, 144 S. Ct. 325 (2023).

## CONCLUSION

Transparency is a touchstone of our judicial system. Only information that is truly confidential may be concealed from the public. Parties are expected to diligently follow the rules regarding confidentiality to promote public access to the

judiciary, protection of confidential information, and judicial efficiency. Because the parties failed to abide by the Court's rules and object to statements by the Court that are not confidential, the Motion to Retract is **DENIED**.

_____
Stephen Alexander Vaden, Judge

Dated: January 8, 2024
New York, New York